**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHRISTOPHER AMBROSE,<br>*Plaintiff*,<br><br>v.<br><br>TINA SWITHIN,<br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>) | 3:25-CV-01372 (SVN)<br><br><br><br><br><br>September 30, 2026 |

**RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

Plaintiff Christopher Ambrose brings this action *pro se*[1] against Defendant Tina Swithin. Plaintiff alleges that Defendant, who operates the website One Mom's Battle, published an article on that site falsely accusing the Plaintiff of isolating and abusing his children sexually, verbally, and emotionally, and conspiring with family court officials and others involved in family services to unlawfully gain child custody. Plaintiff raises six state law counts against Defendant: (1) false light invasion of privacy; (2) public disclosure of private facts; (3) defamation *per se*; (4) general defamation; (5) intentional infliction of emotional distress ("IIED"); and (6) criminal harassment in violation of Conn. Gen. Stat. § 53a-183(a).

Defendant has moved to dismiss Plaintiff's complaint on several grounds, including lack of personal jurisdiction, improper venue, and failure to state a claim. For the reasons set forth below, the Court GRANTS Defendant's motion to dismiss for lack of personal jurisdiction with respect to Counts Three and Four. Further, the Court dismisses Count Six, because it is not a valid

---

[1] As the Court noted in another of Plaintiff's cases, Plaintiff is not afforded the special solicitude ordinarily granted to *pro se* litigants, given that he graduated law school and passed the bar, although he allowed his law license to lapse. *See Ambrose v. Lee*, No. 3:25-CV-398 (SVN), 2026 WL 884031, at *3–4 (D. Conn. Mar. 31, 2026).

claim in civil litigation. The Court DENIES the motion with regard to all other claims. Thus, portions of Count One, and Counts Two and Five survive the motion and will remain pending.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's amended complaint is lengthy and spends considerable time detailing conflicts between himself and his ex-wife. The Court recounts this material only briefly and focuses here on allegations connected with the Defendant and the motion to dismiss. When considering a motion to dismiss the Court treats the factual allegations of the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. Plaintiff's Divorce and Custody Battle

Plaintiff resides in Connecticut. Am. Compl., ECF No. 14 ¶ 1. Plaintiff filed for divorce from his now ex-wife, Karen Riordan, in July 2019, after several years of worsening relations. *Id.* ¶ 40. After Plaintiff filed for divorce, Riordan began making allegations that Ambrose had mistreated their children, even sexually abusing them. *Id.* ¶ 45. The Connecticut Superior Court appointed a *guardian ad litem*, and the couple used marital assets to pay an attorney for serving in this role. *Id.* ¶¶ 47–49.

Plaintiff and Riordan also engaged in a long and bitter child custody dispute. The amended complaint describes Riordan as attempting to get the children to falsely report Plaintiff for mistreating them, and Connecticut courts frequently intervening. *See, e.g., id.* ¶¶ 63–64, 69, 72–75, 85–86. Plaintiff frequently references, but does not attach, the Connecticut Superior Court's custody decision, *Ambrose v. Ambrose*, No. FBT-FA-19-6088163-S, 2022 WL 21749185 (Conn. Super. Ct. Apr. 26, 2022).[2] That opinion states that "none of the allegations concerning the

[2] The Court may take judicial notice of matters of public record, including rulings from other courts. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Glob. Network Comm'ncs, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

mistreatment of the three minor children have been substantiated. Despite investigations by DCF, Yale-New Haven Hospital, Connecticut Children's Hospital and work done by individuals assigned to help the family, none of the allegations could be proven." *Id.* at *9. The Superior Court also noted that there were several "determinations of coaching" of Plaintiff's children as to the answers they provided, specifically as to the allegations of sexual abuse. *Id.* Plaintiff was granted temporary sole legal custody of the couple's three children on April 16, 2020. *Id.* at *5. Ultimately, on April 26, 2022, Plaintiff was awarded sole permanent custody of the children, and Riordan was permitted supervised visitation "contingent upon a complete psychiatric examination and court-supervised treatment." ECF No. 14 ¶ 117.

B. Defendant's Alleged Statements

According to the amended complaint, Defendant, who is domiciled in California, is a self-proclaimed "family court expert" and "divorce coach" who publishes material on family court proceedings on a website, *onemomsbattle*.com, and on other platforms. *Id*. ¶¶ 2, 8, 207. She reaches a "worldwide audience" through her One Mom's Battle site and through social media channels such as Instagram, Facebook, and YouTube. *Id*.

In September of 2023, Defendant published an article entitled *ReBranding "Parental Alienation" into Coercive Control* (the "Article") on her website, writing about Plaintiff's custody dispute; it described Plaintiff as "perpetrating abuse—verbal, emotional, and sexual—against [his] three children." *Id.* ¶ 217; *see also id.* ¶¶ 218–237 (quoting Article).[3] Further, the Article accused Plaintiff of "abusing and stalking" Riordan, as well as lying other oath and, according to Plaintiff,

[3] Plaintiff has not supplied the Court with the entire Article—only selected excerpts. Defendant has included the entire Article with her motion to dismiss, *see* ECF No. 24-2. The Court may consider the full version of the Article submitted by Defendant for purposes of this motion because the amended complaint relies "heavily upon its terms and effect," which renders it "integral" to the complaint. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (*per curiam*).

conspiring with state officers and judges to gain custody of his children. *Id.* ¶ 10. Plaintiff alleges that he sent Defendant a cease-and-desist letter on July 10, 2025, identifying "specific statements in her publication as false, defamatory, and grossly misleading." *Id.* ¶ 21. He included the Superior Court's April 26, 2022, decision. *Id.* Defendant thereafter removed the Article, "but refused to issue any retraction, correction, or acknowledgement of falsity." *Id.* ¶ 25.

Plaintiff also alleges that Defendant republished allegedly defamatory material written by others about him. For instance, on August 8, 2023, Defendant hyperlinked an article by Riordan's new intimate partner, Frank Parlato Jr., published on Parlato's website. *Id.* ¶¶ 247–49.[4] Defendant also hyperlinked an article published on September 3, 2023, by "The Women's Coalition" that Plaintiff claims defamed him. *Id.* ¶ 262–63. Further, Defendant also stated that she interviewed one of Plaintiff's children and later hyperlinked to a video interview where Plaintiff's daughter repeats allegations of abuse. *Id.* ¶¶ 179, 191.

Plaintiff also highlights statements that Defendant has made since the commencement of this lawsuit. For instance, on September 27, 2025, Defendant endorsed and commented on a GoFundMe fundraising page to solicit funds for her legal defense in this suit, suggesting that Plaintiff was aligned with "[p]owerful groups," and that the suit was a "coordinated campaign of harassment" that crosses "legal lines." *Id.* ¶¶ 265–67. In October of 2025, Defendant "featured, promoted, and hyperlinked on her social-media platforms to a video 'interview' of Plaintiff's daughter," in which his daughter "repeats long-discredited allegations of abuse against Plaintiff." *Id.* ¶ 271.

[4] Plaintiff has also sued Parlato, in a case pending before the undersigned. *See Ambrose v. Parlato*, No. 3:25-CV-1151 (SVN).

C. The Amended Complaint and Motion to Dismiss

Plaintiff filed the original complaint in this action on August 28, 2025, *see* Compl., ECF No. 1, and then filed the amended complaint before serving Defendant. Defendant, who is represented by counsel, contends that the amended complaint should be dismissed because the Court lacks personal jurisdiction over her; because this District is an improper venue; and because the amended complaint fails to plausibly allege any claims against her. *See* Def.'s Mot. to Dismiss Br., ECF No. 24-1. Plaintiff opposes the motion. *See* Pl.'s Opp. Br., ECF No. 31.

## II. PROCEDURAL GROUNDS FOR DISMISSAL

A. Personal Jurisdiction

*1. Legal Standard*

On a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of a *prima facie* showing that personal jurisdiction exists over the defendant. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (*per curiam*); *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (where neither party seeks to conduct discovery or requested an evidentiary hearing on matters of jurisdiction, the plaintiff need only make *a prima facie* showing of personal jurisdiction). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010), (internal quotation marks, citation, and subsequent history omitted; alteration in original).

Evaluating whether a federal court has personal jurisdiction over a non-resident defendant is a two-step inquiry. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243–44 (2d Cir. 2007). First, (1) state law must authorize personal jurisdiction; and (2) the exercise of jurisdiction must comport with constitutional due process principles. *Chloe*, 616 F.3d at 163–64. "The first inquiry must be

whether [Connecticut's] long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if [the court] find[s] the statute to be applicable do[es it] reach the question whether it would offend due process to assert jurisdiction." *W. World Media, LLC v. Ikamobile Ltd.*, 809 F. Supp. 2d 26, 30 (D. Conn. 2011) (quoting *Lombard Bros. v. Gen. Asset Mgmt. Co.*, 190 Conn. 245, 250 (1983)) (alterations omitted).

As part of the due process inquiry, the Court analyzes whether general or specific jurisdiction is asserted over the defendant. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018). Because general jurisdiction typically exists for an individual in the individual's domicile—which, for Defendant here is California—Plaintiff can assert only that the Court has specific jurisdiction over Defendant. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). And when a plaintiff asserts specific personal jurisdiction, "they must make that showing 'with respect to each claim asserted.'" *Sullivan v. UBS AG*, 149 F.4th 206, 217 (2d Cir. 2025) (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018)); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Some claims may survive this analysis while others do not; specific personal jurisdiction is not necessarily all or nothing.

Importantly, however, the plaintiff may not rely on "conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Mazloum v. Int'l Com. Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Jazini*, 148 F.3d at 185 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Finally, while the Court construes all pleadings and affidavits in the light most favorable to the plaintiff, it must not "draw argumentative inferences

in the plaintiff's favor." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

2. *Discussion*

Defendant contends that the Court lacks personal jurisdiction over Plaintiff's defamation claims in Counts Three and Four because Plaintiff cannot establish the applicability of a state long-arm statute with respect to those claims, and that the Court lacks personal jurisdiction over Plaintiff's remaining claims because the exercise of personal jurisdiction over Defendant would violate due process. The Court agrees with Defendant that it cannot exercise personal jurisdiction over Plaintiff's defamation claims under Connecticut's long-arm statute, and thus Counts Three and Four must be dismissed. But the due process analysis favors Plaintiff with respect to Counts One, Two and Five, and thus the Court has personal jurisdiction over Defendant with respect to those counts. The Court addresses Count Six separately.

a. State Long-Arm Statute: Defamation Claims

Connecticut's long-arm statute provides for personal jurisdiction over a nonresident individual who, in relevant part: "(1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Conn. Gen. Stat. § 52-59b(a)(1)–(3).

Defendant contends that the Connecticut long-arm statute bars the exercise of personal jurisdiction over her only with respect to Counts Two and Three, Plaintiff's defamation claims. *See* ECF No. 24-1 at 13–15. Accordingly, the Court examines the long-arm statute's applicability to those counts only.

The Court begins with subsection (1), which "provides jurisdiction over certain out-of-state defendants who '[t]ransact[] any business within the state." *See Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 n.4 (2d Cir. 2017). If Plaintiff has made a *prima facie* showing that Defendant has transacted any business within the state of Connecticut under subsection (1), the Court would have jurisdiction over Plaintiff's defamation claims regardless of subsections (2) and (3), and need not go further. But it concludes that he has not.

The phrase "transacts any business within the state" is construed "quite broadly" by the Supreme Court of Connecticut. *Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 560 (D. Conn. 2010) (citing *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981). Indeed, "[t]he phrase can embrace as little as "a single purposeful business transaction." *Zartolas*, 184 Conn. at 474. But in addition to alleging that a defendant transacted business with the state, the complaint must also demonstrate that the plaintiff's cause of action arises "from the defendant's transaction of business within [Connecticut]." *Simonson v. Olejniczak*, No. 22-1219, 2023 WL 2941521, at *2 (2d Cir. Apr. 14, 2023) (summary order) (citing *Zartolas*, 184 Conn. at 477); *Statek Corp. v. Coudert Bros*. LLP, No. 3:07-CV-456 (SRU), 2018 WL 834227, at *15 (D. Conn. Feb. 12, 2018) ("section 52-59b(a)(1)'s second requirement" is that plaintiff's cause of action against the defendant arose from the defendant's business activity in Connecticut) (citing *Ryan v. Cerullo*, 282 Conn. 109, 121–122 (2007)). And despite that the statute is interpreted broadly, "[t]here must be some definitive act taken by the defendant that evinces a purposeful availment of the privileges of conducting the

subject activity within the forum state and that, subsequently, invokes the benefits and protections of its laws." *Walshon v. Ballon Stoll Bader & Nadler*, P.C., 121 Conn. App. 366, 372 (2010).[5]

The Court first notes that the amended complaint is devoid of allegations that Defendant transacted even a single instance of business in Connecticut. And while Plaintiff contends in opposition to the motion to dismiss that Defendant had "Extensive Activities" in the state, ECF No. 31 at 7, this is an exaggeration of Defendant's business ties to Connecticut—particularly as they are alleged in the amended complaint. In his opposition brief, Plaintiff states that the Defendant served as a divorce coach for a Connecticut resident (Plaintiff's ex-wife), frequently communicates with the state, created "crafted content specifically around Connecticut litigants and unique state statutes," and has a Connecticut chapter of her organization, One Mom's Battle. *Id.* at 8. Plaintiff even contends that Defendant was hired by his ex-wife, a Connecticut resident, to "to create and promote content specifically concerning an active Connecticut family court dispute." *Id.* at 14.

But these facts do not appear in the amended complaint, so the Court need not consider them here. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (citing cases for the proposition that a party prohibited from amending pleadings through their opposition memorandum to the motion to dismiss); *Milligan v. GEICO Gen. Ins. Co.*, No. 20-3726-CV, 2022 WL 433289, at *6 (2d Cir. Feb. 14, 2022) (summary order) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (quoting *Lazaro v. Good*

[5] Plaintiff cites to *Cogswell v. Am. Transit Ins. Co.*, 282 Conn. 505, 523 (2007) as holding that "courts examine the 'totality of the defendant's Connecticut-related conduct,'" in analyzing § 52-59b(a)(1). *See* ECF No. 31 at 6. But there are problems with this citation. First, *Cogswell* examines different long-arm statutes, not § 52-59b(a)(1). *See id.* at 517 ("we conclude that the trial court properly determined that the defendant was subject to personal jurisdiction under §§ 38a-271(a)(6) and 38a-273(a)). Second, the Court cannot locate the language Plaintiff purports to cite from *Cogswell* in the opinion itself. As an attorney, Plaintiff is hereby warned that sanctions may issue in the future for false citations that appear intended to mislead the Court.

*Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999)).[6] Thus, the Court concludes that § 52-59b(a)(1) does not provide personal jurisdiction over Defendant with respect to Plaintiff's defamation claims.

The Court thus turns to subsections (2) and (3) of the long-arm statute, which permit the exercise of personal jurisdiction when the defendant has engaged in certain tortious conduct. But these subsections explicitly exempt claims for defamation, *see* Conn. Gen. Stat. § 52-59b(a)(2) & (3), and Plaintiff appears to concede that his defamation claims in Counts Three and Four would not fall under these subsections. *See* ECF No. 31 at 10 ("Even if the Court were to conclude that § 52-59b(a)(1) does not independently confer personal jurisdiction over all claims . . . jurisdiction would still lie under § 52-59b(a)(2) & (a)(3) for Plaintiff's non-defamation cause of action. . . . The statutory defamation carve-out applies only to defamation, not to these independent torts."); *see id.* at 11–17 (focusing on whether § 52-59b(a)(2) & (3) apply to the non-defamation claims). Accordingly, the Court holds that Plaintiff has failed to meet his burden of a *prima facie* showing

[6] While the Court declines to consider the new facts that the Plaintiff introduces in his opposition brief, even if the Court were to do so, they would not alter its conclusions as to Conn. Gen. Stat. § 52-59b(a)(1). The existence of a "Connecticut chapter" of One Mom's Battle with 36 members—a minuscule fraction of Defendant's 250,000 total social media followers—does not necessarily show that Defendant transacted business in the state, especially where Plaintiff characterizes One Mom's Battle as a "global commercial enterprise" that has chapters in all of the other forty-nine states and Puerto Rico. *See* ECF No. 31 at 2. Nor does creating "content" about a state's legal affairs mean a party has done business there, just as a newspaper does not transact business in every location it features in its reporting. That Defendant may have been a divorce coach for a Connecticut resident is not enough either, particularly as Plaintiff does not claim the coaching itself occurred in the state. According to Plaintiff, his ex-wife, who allegedly hired Defendant, left the state in September 2021 during the divorce action and returned only in January 2023 after it concluded, so it is likely this coaching activity may have occurred outside Connecticut. ECF No. 14 ¶¶ 111, 142. Finally, the allegation that Defendant was paid by Plaintiff's ex-wife specifically to influence his family court dispute in Connecticut might have weight if it entered the Court's analysis, but it is offered by the Plaintiff only as a conclusory allegation without any factual support. *See* ECF No. 31 at 14. The Court declines Plaintiff's request for jurisdictional discovery for these reasons, and will not grant leave to amend, given that Plaintiff has already once amended his complaint and has not requested leave. As noted above, Plaintiff is an attorney and is therefore not entitled to the usual solicitude granted to *pro se* litigants.

of personal jurisdiction over Defendant with respect to Counts Two and Three, alleging defamation, and these Counts must be dismissed on this basis.[7]

As Defendant does not raise any long-arm statute deficiency with respect to Plaintiff's remaining causes of action, *see* ECF No. 24-1 at 17, the Court assumes (without deciding) that such jurisdiction exists, and proceeds with assessing whether the exercise of personal jurisdiction over Defendant on those counts would comport with due process.

b. Due Process Analysis

The Court concludes that exercising personal jurisdiction over Defendant with respect to Plaintiff's non-defamation causes of action would be consistent with due process.

The Fourteenth Amendment's Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). The nonresident defendant generally must have "certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (cleaned up) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The due process "analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe*, 616 F.3d at 164.

To satisfy the minimum contacts inquiry, a plaintiff must show that the court has either general or specific jurisdiction over the defendant. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018). As discussed above, general jurisdiction does not apply here because Defendant is domiciled in California. *See Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident

[7] In light of this conclusion, the Court does not reach Defendant's arguments for dismissal of Counts Two and Three under Rule 12(b)(6), including her contention that her statements are subject to a qualified privilege or First Amendment protection.

defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted). "The exercise of specific jurisdiction depends on in-state activity that '*gave rise to the episode-in-suit*.'" *Waldman v. Palestine Lib. Org.*, 835 F.3d 317, 331 (2d Cir. 2016), *mandate recalled by Waldman v. Palestine Lib. Org.*, 171 F.4th 575 (2d Cir. Mar. 30, 2026) (quoting *Goodyear*, 564 U.S. at 923 (emphasis in original)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. The analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (collecting cases). A "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction"; "these same principles apply when intentional torts are involved." *Id.* at 286 (cleaned up). Thus, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.*

In this Circuit, "where 'the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff,'" courts employ "an 'effects test,' by which 'the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum.'" *Tarsavage v. Citic Trust Co., Ltd.*, 3 F. Supp. 3d 137, 145 (S.D.N.Y.2014) (cleaned up and quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013)); *see also Calder v. Jones*, 465 U.S. 783, 788–789 (1984).

The amended complaint sufficiently alleges that Defendant expressly aimed her conduct at Connecticut, such that the exercise of specific personal jurisdiction over her comports with due

process. In *Calder*, the Supreme Court held that California could assert personal jurisdiction that comported with due process over two Florida-domiciled journalists who published in print an allegedly libelous article against a California plaintiff in a newspaper whose largest readership was based in California. *Id.* at 788–790 (1984). Both journalists wrote the story outside of California, "relying on phone calls to sources in California," for the article. *Id.* at 785. The Supreme Court held that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id*. at 790.

Applying *Calder*, courts in this district have similarly found that online posts targeted at a plaintiff who lives in Connecticut were sufficient to establish specific personal jurisdiction over the defendant where the defendant knew the plaintiff was a Connecticut resident and the plaintiff's life was "centered in Connecticut and the brunt of the harm was felt . . . in Connecticut." *Doe v. Ciolli*, 611 F. Supp. 2d 216, 223 (D. Conn. 2009) (citing *Calder*, 465 U.S. at 788–90); *Sanchez v. Leonard*, No. 3:24-CV-1434 (SFR), 2025 WL 3229809, at *4 (D. Conn. May 1, 2025), *report and recommendation adopted* (Oct. 6, 2025); *Imbruce v. Buhl*, No. 3:15-CV-554 (JAM), 2016 WL 2733097, at *6–7 (D. Conn. May 10, 2016).

Here, Defendant was aware that Plaintiff was a resident of Connecticut and had been so for several years, and she published the Article concerning Connecticut-centered activities and redistributed other content that allegedly placed him in a false light and invaded his personal privacy; the brunt of the harm was felt in Connecticut, where Plaintiff resides. Applying this precedent, the Court finds that Plaintiff has sufficiently alleged Defendant has minimum contacts with Connecticut, sufficient to justify the exercise of personal jurisdiction.

The Court also concludes that the exercise of personal jurisdiction over Defendant would be constitutionally reasonable here. For reasonableness, the key question is "whether the assertion

of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe*, 616 F.3d at 164 (internal quotation marks omitted). "Courts are to consider five factors in evaluating reasonableness: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)). When a plaintiff has made the threshold showing of minimum contacts at the first step of the due process analysis, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Metropolitan Life Ins. Co.*, 84 F.3d at 568) (internal quotations omitted).

Weighing these factors, the Court finds that exercising personal jurisdiction over Defendant is constitutionally reasonable. With respect to the first factor, it is true that Defendant, who is domiciled in California, will face significant burdens in litigating this action across the country, in Connecticut.[8] Plaintiff does not seriously take on Defendant's burden argument, contending only that she "maintains an active Connecticut OMB chapter and regularly interacts

[8] Defendant has submitted, as an exhibit to her motion to dismiss, an email she sent to Plaintiff on July 10, 2025, stating that she was "currently navigating a health crisis and hooked up to IVs." ECF No. 24-3 at 5. Defendant has offered to submit an affidavit concerning the burden of litigating the case in Connecticut in light of those health concerns. *See* ECF No. 24-1 at 22. The time to have submitted such an affidavit was with her motion to dismiss. Defendant's counsel is from Connecticut. *See* ECF No. 24-1 at 38 (noting counsel's address in Hartford). And the Court can make accommodations, as necessary, if Defendant needs to appear for a remote deposition or remote testimony. Accordingly, while recognizing that Defendant faces a burden of litigating in Connecticut, this argument does not carry the day.

with Connecticut followers," while also recognizing that she operates a nationwide web-based platform and markets services throughout the country. ECF No. 31 at 20. At the same time, the Second Circuit has recognized that, "[e]ven if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because 'the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.'" *Bank Brussels Lambert*, 305 F.3d at 129–30 (quoting *Metropolitan Life Ins. Co.*, 84 F.3d at 574). Thus, this factor favors Defendant, but not heavily.

The second, third, and fourth factors weigh in favor exercising jurisdiction. Connecticut has an interest in adjudicating this action, given that it involves claims related to one of its citizens and is related to an underlying family court proceeding here. Plaintiff has an interest in obtaining convenient relief (though the effectiveness of such relief is neutral, as a California court is as capable of affording effective relief as a Connecticut one). And this Court has some familiarity with this action and with Plaintiff's other actions against Parlato and a third Defendant he claims defamed him in connection with his divorce and custody proceedings, Bandy Lee. *See Ambrose v. Lee*, No. 3:26-CV-667 (SVN).

As to the fifth factor, Connecticut has an interest in furthering substantive policies that work to safeguard the reputations of its citizens, but this is tempered by the fact that the alleged publications were all written and published out of state, making this element neutral at best.

Weighing all five factors, the Court finds that the exercise of specific personal jurisdiction over Defendant is reasonable. Thus, Defendant's motion to dismiss pursuant to Rule 12(b)(2) is denied with respect to Counts One, Two, and Five.

In sum, Counts Three and Four are dismissed for lack of personal jurisdiction, but Counts One, Two, and Five survive the jurisdictional analysis. Count Six, as discussed below, is dismissed for failure to state a claim.

B. Venue

*1. Legal Standard*

Next, the Court concludes that venue is proper here.

Federal Rule of Civil Procedure 12(b)(3) allows a party to move for dismissal based on improper venue. The plaintiff has the burden of showing that venue is proper; in the procedural posture applicable here, Plaintiff need only make a *prima facie* showing of venue. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (quoting *CutCo Indus.*, 806 F.3d at 364–65).

The question of whether venue is improper is governed by 28 U.S.C. § 1391. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas,* 571 U.S. 49, 55 (2013). Relevant here, § 1391(b) provides that venue is proper in: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"; or (3) if there is no district in which the action may be brought, any district in which the court has personal jurisdiction over any defendant. 28 U.S.C. § 1391(b)(1)–(3). Defendant does not reside in Connecticut, which rules out proper venue under § 1391(b)(1). Thus, the Court considers whether venue is property under § 1391(b)(2) and (3).

*2. Discussion*

For venue to be proper under § 1391(b)(2), "a substantial part of the events or omissions giving rise to the claim" must have occurred in the District of Connecticut. *Id*. Although § 1391(b)(2) "does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred," *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408,

432 (2d Cir. 2005), the court must "take seriously the adjective 'substantial,'" *Gulf Ins. Co.*, 417 F.3d at 357. "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel*, 428 F.3d at 432–33 (citing *Gulf Ins. Co.*, 417 F.3d at 357). "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Id.* at 433.

Therefore, when a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, the court should: (1) "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims"; and (2) "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether 'significant events or omissions material to those claims have occurred in the district in question.'" *Id.* at 432 (cleaned up) (quoting Gulf Ins. Co., 417 F.3d at 357). Importantly, venue may be proper in more than one district, *Gulf Ins. Co.*, 417 F.3d at 356, and the Court must take the allegations of the complaint as true when deciding whether venue is proper. *See Matchroom Boxing Ltd. v. Paul*, No. 22-CV-8178 (PGG), 2024 WL 4363700, at *5 (S.D.N.Y. Sept. 30, 2024) (collecting cases).

The Court concludes that venue is proper in Connecticut under this test. Defendant focuses largely on the fact that the amended complaint does not allege where she was when she published the Article and other statements at issue, but the gravamen of the complaint is events that occurred in Connecticut—including Plaintiff's interactions with his children and the events in the divorce and custody proceedings. Further, Plaintiff alleges that Defendant was communicating by phone with Riordan prior to publication of the Article in September of 2023, and that Riordan was

residing in Connecticut as of January 2023. ECF 14 ¶¶ 11, 142, 217. The alleged harm to Plaintiff's reputation falls principally within Connecticut, where Plaintiff resides, and the emotional distress that he allegedly suffered would have occurred here. *See id.* ¶ 5 (alleging that the "the resulting injuries occurred in this District"); *see also Rothstein v. Carriere*, 41 F. Supp. 2d 381, 387 (E.D.N.Y. 1999) (recognizing that the place where the harm occurred is relevant for venue purposes); *Coffaro v. Crespo*, No. 08-CV-2025 (DGT), 2009 WL 1505681, at *4 (E.D.N.Y. 2009) (finding that harm from slander of title claim that occurred in the plaintiff's state of residence justified venue). Additionally, to the extent that it is necessary for Plaintiff to demonstrate that he was portrayed falsely and his privacy was invaded, the locus of operative facts for such claims is more likely to be in Connecticut than in any other state, as critical documents and the witnesses to those events are more likely to be located here.

In sum, the Court concludes that a substantial part of the acts giving rise to Plaintiff's claims occurred in Connecticut, so venue is proper in the District of Connecticut.[9]

## III. FAILURE TO STATE A CLAIM

As discussed above, Counts Three and Four are dismissed for lack of personal jurisdiction. Below, the Court concludes that Plaintiff fails to state a claim as to Count Six, alleging criminal harassment. But portions of Counts One (false light invasion of privacy), and all of Counts Two (public disclosure of private facts) and Five (intentional infliction of emotional distress) survive Defendant's Rule 12(b)(6) challenge.

### A. Legal Standard

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a

[9] Defendant has not moved for transfer of venue, as an alternative to dismissal. Thus, the Court does not analyze whether transfer would be appropriate, notwithstanding that Connecticut is a proper venue, under 28 U.S.C. § 1404(a).

complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp.*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

B. Discussion

For the reasons discussed below, Defendant's motion to dismiss is denied as to Counts Two, and Five, but granted as to Count Six. It is partly granted and partly denied with respect to Count One.

*1. Count One: False Light Invasion of Privacy*

First, the Court concludes that Plaintiff has adequately stated a claim for false light invasion of privacy.

Connecticut has adopted the definition of the false light invasion of privacy tort from the Restatement (Second) of Torts, which recognizes "that liability may be imposed where a defendant 'gives publicity to a matter concerning another that places the other before the public in a false light ... if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Chiaravallo v. Middletown Transit Dist.*, 561 F. Supp. 3d 257, 291 (D. Conn. 2021) (quoting *Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299, 311 (D. Conn. 2000)); *see also Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 131 (1982). Not only must the defendant's statements be false, but "they must be 'such a major misrepresentation of [the plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.'" *Chiaravallo*, 561 F. Supp. 3d at 291 (quoting *Jonap v. Silver*, 1 Conn. App. 550, 558 (1984)).

Defendant appears to concede that the statements in the Article and her other publications would be highly offensive to a reasonable person. *See* ECF No. 24-1 at 28–29 (arguing only the second element of this claim). Indeed, the publications accused the Plaintiff of sexually abusing his children, *see* ECF No. 14 ¶ 217; there can be little doubt that to be placed in such a false light would be highly offensive to a reasonable person.

This leaves only the question of whether the Defendant acted with knowledge or recklessly. At this stage, the Court finds that, at a minimum, the amended complaint adequately pleads Defendant's recklessness. Defendant contends it was reasonable for her to rely on Riordan and

her children in her account of the situation because "[the Defendant] had no reason not to at that time." ECF No. 24-1 at 29. This misunderstands the standard; simply hearing from another person that an individual has sexually abused their children does not provide license to repeat that accusation. Plaintiff also alleges that Defendant read the court documents establishing that Riordan had coached their children to make false claims. ECF No. 14 ¶ 203. The Article itself references and was critical of Judge Grossman's decision to award primary custody to Plaintiff—demonstrating Defendant did, indeed, know of that decision. *See Powell v. Jones-Soderman*, 849 F. App'x 274, 278 (2d Cir. 2021) (summary order) (upholding judgment against a defendant for false light invasion of privacy, where the defendant was aware of state court rulings discrediting accounts that the plaintiff had sexually abused his children). But even if Defendant had not read these documents, the scienter required is actual knowledge *or* recklessness, and failure to read such documents before publishing statements about Plaintiff's actions could also be considered reckless.

The amended complaint does not demonstrate a viable false light claim in relation to statements the Defendant made connected with her fund-raising efforts around this lawsuit, however. An online GoFundMe fundraising appeal for Defendant's legal defense for the instant action declared that Defendant was being targeted by "[p]owerful groups that profit from family-court chaos." ECF No. 14 ¶ 269. It is unclear from the amended complaint whether Defendant authored these statements herself, or if she merely republished them on her blog. *Id.* ¶¶ 190, 265–266, 269. And these declarations do not specifically reference Plaintiff. *Id.* ¶ 266. Defendant is alleged to have personally written a comment on the fundraising page stating that she was concerned about her safety because of Plaintiff. ECF No. 14 ¶ 267. She declares that Plaintiff's

efforts to sue her constituted "more than a lawsuit; it is a coordinated campaign of harassment," and that Plaintiff had engaged in "malicious attacks that cross legal lines." *Id*.

These statements do not satisfy the second element of a false light claim, that Defendant acted in reckless disregard for the falsity of a statement. In the one statement directly attributable to Defendant, she makes a statement about her own state of mind: that she felt threatened. ECF No. 14 ¶ 267. Defendant also correctly characterizes these statements as containing matters of opinion. ECF No. 24-1 at 30. That the lawsuit was a "a coordinated campaign of harassment" or attacks "cross legal lines" are vague statements about the character of the suit, not allegations falsely portraying Plaintiff with regards to a factual matter. The Court does not need to address whether these were highly offensive statements, because there is no indication of Defendant acting with knowledge or reckless disregard of any publicized matter in this context. *See Honan v. Dimyan,* 52 Conn. App. 123, 133 (1999) (noting the elements of false light).

Accordingly, the Court grants the motion to dismiss Count One only with respect to the alleged statements made in connection with the fundraising efforts. The Court denies Defendant's motion to dismiss Count One in all other respects.

*2. Count Two: Public Disclosure of Private Facts*

Next, the Court concludes that Count Two, alleging public disclosure of private facts, is adequately pleaded.

The tort of public disclosure of private facts requires a showing of "public disclosure of any matter that would '(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" *Tarka v. Filipovic*, 45 Conn. App. 46, 53 (1997) (quoting *Perkins v. Freedom of Information* Comm'n, 228 Conn. 158, 172 (1993); *see also* Restatement (Second) of Torts § 652D (A.L.I. 1977). This tort relates to "publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie

for defamation." *Tarka*, 45 Conn. App. at 53. Under the Restatement, "there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record." Restatement (Second) of Torts § 652D cmt. b (A.L.I. 1977).

First, the Court notes that Plaintiff cannot advance Count Two on the basis of statements made by Defendant that Plaintiff claims are false, such as the allegations that he sexually abused his children. The tort of public disclosure of private facts covers only facts that are true. *See Tarka*, 45 Conn. App. at 53.

But Plaintiff adequately pleads that Defendant's Article publicly disclosed private facts about him, as interpreted by the Connecticut Supreme Court. Drawing on the Restatement's commentary, that court has noted: "Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest." *Perkins*, 228 Conn. 158 at 172–73 (quoting *Restatement (Second), Tort*s § 652D cmt. b (1977)). To the extent that the conflicts between Plaintiff and his ex-wife and children are "family quarrels," and not already subject to public knowledge, they fall under this tort.[10]

[10] The term quarrels here is not intended to undermine severity of the disagreements and conflicts involved in the family in this case, as the term has not always been confined to minor conflicts. *See, e.g.*, *Morris v. Morris*, 132 Conn. 188, 43 A.2d 463, 465 (Conn. 1945) (where a Court used the term "quarrels" to describe disputes that were "violent and acrimonious" between spouses).

Defendant claims that her posting "did not publish any facts about plaintiff that were not already public." ECF No. 24-1 at 31. The commentary of the Second Restatement follows an almost identical sentence with an example of the kind of facts that are already public: "There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record, such as the date of his birth, the fact of his marriage, his military record, the fact that he is admitted to the practice of medicine or is licensed to drive a taxicab, or the pleadings that he has filed in a lawsuit." Restatement (Second) of Torts § 652D (A.L.I. 1977). By contrast, the Restatement identifies an individual's income tax returns as a private fact. *Id.* Under this test, by their mere nature, the facts Defendant is claimed to have disclosed here are not matters of public record akin to a date of birth, the fact of a marriage, or licensed to drive or practice a profession.

Defendant also contends that the amended complaint only alleges she "merely restated and republished claims made online by others," but this argument is not persuasive. ECF No. 24-1 at 32. [11] The amended complaint states that Defendant's articles revealed private details about Plaintiff's personal and family life. ECF No. 14 at 60. At this stage, accepting that allegation as true, it is not proper to dismiss Count Two on the basis that Defendant merely restated information made public by others. Nor was this mere republication: the amended complaint implies that there were novel discussions of private facts. Plaintiff highlights numerous private facts Defendant discussed including the appointment of the *guardian ad litem*, the appointment of counselors for Plaintiff's children, the mental health of Plaintiff's children, their relationship with their father, and their relationship with their grandparents. *Id.* ¶¶ 216, 222–223, 225–226. Even if Defendant's

[11] Restating and republishing are also not the same activity. When Plaintiff "restated" allegations in her own , she did more than simply posting hyperlinks to stories where others disclosed private facts.

writings about Plaintiff were not wholly original, Defendant's article adding new details disclosing private facts about the Plaintiff, and making them available to a wide audience, could still be included under this tort.

At a later stage of the case, Defendant may be able to show that the private facts she disclosed were already widely known to the public. For instance, Defendant observes that Parlato had previously published hundreds of articles about the Plaintiff and his situation. ECF No. 24-1 at 32. However, taking the allegations in the amended complaint as true, the Court does not have information demonstrating that every statement Defendant made about private facts had already been disseminated widely by others.

Accordingly, the Court does not find grounds to dismiss this count.

*3. Count Five: Intentional Infliction of Emotional Distress*

Count Five, alleging intentional infliction of emotional distress, is adequately pleaded.

Under Connecticut law, to prove intentional infliction of emotional distress ("IIED"), the plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)).

Defendant challenges only that her conduct was neither extreme nor outrageous—the second element of this claim. The Court disagrees. True, the standard for establishing extreme and outrageous conduct is stringent: "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Appleton*, 254 Conn. at 210–11. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id.* at 211 (citation omitted).

Here, the Court finds that Plaintiff has adequately pleaded Defendant's conduct was extreme and outrageous. Defendant published an accusation that Plaintiff sexually abused his minor children. ECF No. 14 ¶ 217. In Connecticut, false accusations of child sexual abuse may give rise to IIED claims. *See Watts v. Chittenden*, 301 Conn. 575, 577 (2011) (describing trial court judgment for the plaintiff on an intentional infliction of emotional distress claim, where the defendant had falsely accused her former spouse of sexually abusing the couple's children); *Snyder v. Cedar*, No. NNH-CV-010454296, 2006 WL 539130, at *21 (Conn. Super. Ct. Feb. 16, 2006) ( "Branding an innocent person as a child molester is extreme and outrageous."). The accusations that Defendant makes against Plaintiff—that he is manipulating the law to perpetuate abuse, that he has engaged in "unrelenting harassment and threats" to have his children removed from their mother's care, and that there is substantive evidence of abuse against him, are not the kind of accusations that stem from bad manners or cause mere hurt feelings. *See* ECF No. 14 ¶ 230; Rebranding 'Parental Alienation' into Coercive Control, ECF 24-2 at 1–3. Instead, they are extreme. While Defendant seeks to limit the allegations to a single blog posting, Plaintiff does allege more than just that the Article was published; he cites other instances of Defendant circulating material about him. ECF No. 14 ¶¶ 247, 262. The Article was also online and available for more than two years. Further, while Defendant argues that the community would not see the Defendant's conduct as outrageous but rather see the content of the Plaintiff's alleged conduct toward his children as outrageous, this is an issue unsuitable for resolution on a motion to dismiss.

At the very least, community sentiment is strong against false accusations of abuse. Accordingly, the Court will not dismiss Count Five.

*4. Count Six: Harassment*

Finally, the Court grants Defendant's motion to dismiss as to Plaintiff's criminal harassment claim in Count Six. Count Six of Plaintiff's complaint invokes Conn. Gen. Stat. § 53a-183(a), a criminal penal provision. ECF No. 14 at 64–65. It is well settled that "[p]rivate individuals lack standing to assert criminal violations." *Joan T. v. Comm'r of Soc. Sec.*, No. 3:22-CV-01251(MPS), 2023 WL 2600199, at *5 (D. Conn. Mar. 22, 2023) (citing *Coleman-Bey v. Childrens Aid Soc'y*, No. 19-CV-7911 (CM), 2019 WL 5693688, at *2 (S.D.N.Y. Nov. 4, 2019)). Because this count clearly cannot be sustained in Plaintiff's civil suit, Defendant's motion to dismiss is granted as to Count Six.

## IV. CONCLUSION

For the reasons described herein, Defendant's motion to dismiss, ECF No. 24 is GRANTED in part as to Counts Three, Four, and Six of Plaintiff's complaint, GRANTED IN PART and DENIED IN PART with regard to Count One, and DENIED in all other respects.

Defendant shall answer the remaining allegations of the amended complaint by **October 21, 2026.** The parties are ordered to confer and submit a revised Rule 26(f) Report proposing dates for any remaining discovery by **October 21, 2026.**

**SO ORDERED** at Hartford, Connecticut, this 30th day of September, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE